UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONYA L. JENKINS,

                Plaintiff,

                                                <u>DECISION AND ORDER</u>
                                                09-CV-6339L

                v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

In this action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner"), plaintiff Tonya Jenkins ("plaintiff") appeals from the Commissioner's denial of disability insurance benefits.

On August 18, 2005, plaintiff, then 33 years old, filed an application for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since April 1, 2002, due to back, neck, shoulder and leg impairments, carpal tunnel syndrome, and fibromyalgia. (T. 104-106, 111, 140). Her application was initially denied. (T. 86-93, 328-337). Plaintiff requested a hearing, which was held on July 28, 2008 before Administrative Law Judge ("ALJ") John P. Costello. (T. 338-374). The ALJ issued a decision on September 5, 2008, concluding that plaintiff was not disabled under the Social Security Act. (T. 19-31). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 12, 2009 (T. 5-7). Plaintiff now appeals.

The plaintiff has moved for a judgment vacating the Commissioner's decision and for an order remanding for calculations and payment of benefits (Dkt. #6). The Commissioner has cross moved (Dkt. #9), for summary judgment dismissing the complaint. For the reasons

discussed below, the Commissioner's cross motion for summary judgment is denied, plaintiff's motion is granted in part, and the matter is remanded for further proceedings.

DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits her to perform the requirements of her past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and

work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

ALJ Costello analyzed plaintiff's claim of disability in a lengthy, ten-page decision (seven pages of which comprises his analysis of the evidence).  The ALJ set forth the medical evidence in detail, with particular focus on plaintiff's lumbar and cervical spine disorder and shoulder disorder, which he determined constituted a severe impairment not meeting or equaling a listed impairment.  In analyzing the pertinent evidence of plaintiff's exertional limitations, the ALJ found that plaintiff could perform light work with certain additional limitations.  Plaintiff makes no objection to the ALJ's determination of her RFC as it relates to these exertional limitations, and I find that that determination is supported by substantial evidence in the record.

With respect to non-exertional limitations, the ALJ referred to the plaintiff's history of mild depression, but emphasized that she had never sought or received treatment for depression,

and found no evidence that plaintiff's alleged depression interfered with her ability to perform a wide range of personal, family, and household maintenance activities. To the contrary, the claimant testified that she fully and independently managed all aspects of personal care and household maintenance for herself and her three daughters, and it appears that plaintiff's counsel had not even raised the issue of non-exertional limitations at the hearing.

The ALJ also cited the report of consultative examining psychiatrist John Thomassen, who identified few limitations on plaintiff's residual functional capacity caused by her depression, and found plaintiff's mood, attention, concentration, memory, cognitive functioning, insight and judgment to be within the normal range. (T. 217-218). None of plaintiff's treating physicians submitted a report concerning plaintiff's mental RFC, or otherwise indicated the existence of any disabling non-exertional limitations.

Plaintiff nonetheless argues that the ALJ's decision failed to apply the correct legal standards. Plaintiff contends that because her medical records contained evidence of untreated depression and diagnoses of depressive, anxiety and mood disorders which imposed mild to moderate limitations on plaintiff's social and cognitive functioning, the ALJ should have developed the record and applied the "special technique" prescribed by the applicable regulations for assessing the severity of mental impairments.

Plaintiff contends that had the special technique been properly applied, the ALJ might well have concluded that plaintiff's depression did constitute or contribute to a severe impairment, and his ultimate conclusion as to her claim of disability might have been altered. The importance of complying with the regulations relating to the "special technique" has been underscored by the relatively recent Second Circuit decision in *Kohler v. Astrue,* 546 F.3d 260, 266 (2d Cir. 2008; Sotomayor, J.).

The special technique, which applies to the evaluation of "physical and mental impairments" in adults at Steps 2 and 3 of the ALJ's analysis, requires an ALJ to assess four categories of functionality: "activities of daily living; social functioning; concentration,

persistence, or pace; and episodes of decomposition." 20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3). Impairment in the first three categories must be ranked as "none, mild, moderate, marked" or "extreme," and the number of episodes of decomposition must be ranked as "none, one, two" or "three or more." The ALJ must document his analysis of the process in order to "reflect application of the technique, and . . . must include a specific finding as to the degree of limitation in each of the functional areas." *Kohler v. Astrue*, *supra,* 546 F.3d at 266 (internal quotations omitted). A finding of "mild" or less in the first three categories, coupled with a finding of "none" in the final category and the absence of contrary evidence, directs the conclusion that a claimant's mental impairment is *not* severe. 20 C.F.R. §404.1520a(d)(1).

It is undisputed that the ALJ did not explicitly discuss or apply the four categories of the special technique to plaintiff's claim of disability, insofar as that claim was partially premised upon evidence of depressive, anxiety and/or mood disorders. The Commissioner characterizes this error as harmless, noting that although the ALJ's decision does not explicitly apply the special technique, in discussing plaintiff's RFC it nonetheless refers to and discusses the first three prongs of a special technique analysis: plaintiff's "activities of daily living and social functioning," as well as her "attention and concentration," and characterizes the resulting limitation as "mild." (T. 25).[1] The Commissioner also notes that the ALJ's decision relied explicitly on the opinion of consulting physician Dr. Thomassen, whose report contained commentary upon plaintiff's performance in each of those areas.

However, as *Kohler* made clear, coincidental discussion of the special technique factors in connection with a standard RFC analysis is insufficient to satisfy the requirements of 20 C.F.R. §404.1520(a). *Kohler*, 546 F.3d 260 at 268 (an ALJ's "disuss[ion of] the relevant evidence primarily in the context of [a claimant's] residual functional capacity to perform work and not in the context of the four functional areas identified by the regulations" is insufficient to

---

[1] Although no reference is made in the decision to the fourth element – episodes of decomposition – plaintiff has identified no evidence of such episodes, and it appears undisputed that the only appropriate finding as to this factor would be "none."

permit effective appellate review). *See also Moore v. Astrue*, 2010 U.S. Dist. LEXIS 127067 at *8 (D. Conn. 2010) ("the ALJ must make specific findings regarding the claimant's degree of limitation in each functional area [of the special technique]; it is not sufficient to discuss the limitations in the context of the claimant's residual functional capacity"). Furthermore, the fact that the ALJ may have relied upon the opinions of consultative or reviewing physicians who, themselves, performed reviews which included the four relevant factors, does not excuse the ALJ's obligation to produce a "written decision to reflect application of the technique," *Kohler*, 546 F.3d 260 at 266, which "must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §404.1520a(e)(4). No such analysis was performed or recorded here.

Notwithstanding the mandatory language of 20 C.F.R. §404.1520a, the *Kohler* Court "le[ft] open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless." 546 F.3d 260 at 269. Here, if the ALJ's findings concerning the "mild" nature of plaintiff's claimed mental impairments had been supported by substantial evidence in the record with respect to each of the four relevant factors, and had the ALJ discussed and explained his rationale for rejecting any contrary evidence in the record, it is possible that such error could be found harmless. However, such is not the case here.

The record contains evidence suggesting that a precise application of the special technique could support a finding that plaintiff's mental impairment was severe, thus altering the determination of plaintiff's RFC and potentially directing a different conclusion as to her claimed disability. As noted by the ALJ, Dr. Thomassen found plaintiff's mood, attention, concentration, memory, cognitive functioning, insight and judgment to be within the normal range despite diagnoses of depressive disorder, anxiety disorder, and cannabis addiction in full remission (T. 25, 217-218). Nonetheless, Dr. Thomassen noted that plaintiff "is likely to have some problems

relating with coworkers and coping with stress. *Allegations of psychiatric disability may be consistent with examination findings*." (T. 218) (emphasis added). Examining physician Dr. Nasra, whose report was not discussed or referred to by the ALJ, rendered identical diagnoses and concluded that plaintiff's global assessment of functioning ("GAF") was at 60 (T. 208), which "indicates *moderate* symptoms . . . OR moderate difficulty in social, occupational or school functioning." *Kohler*, 546 F.3d 260 at 262 n.1. Non-examining medical consultant Dr. M. Totin, a psychiatrist, examined plaintiff's medical records and diagnosed depressive disorder, anxiety disorder, and cannabis dependence, with resulting "moderate" limitations on plaintiff's ability to maintain social functioning, and her ability to maintain attention and concentration for extended periods. (T. 244, 248-251). These characterizations of plaintiff's limitations in social functioning and concentration, if credited, could form the basis for a finding that plaintiff's impairments in one or more of these areas are "moderate" or worse under the special technique. However, this evidence was not discussed or referred to by the ALJ, let alone discounted or rejected, and it is therefore impossible for an adequate review of his findings to be conducted on appeal. *See Harvey v. Astrue*, 2010 U.S. Dist. LEXIS 123093 at *20 (N.D.N.Y. 2010) (remanding matter for reconsideration where special technique was not applied to assess severity of a claimant's mental impairment, and noting that "on remand, the ALJ should . . . consider all evidence relating to Plaintiff's mental impairments, and not simply recite the findings from one psychologist").

Although the evidence offered by plaintiff with respect to her non-exertional limitations is slim and it is foreseeable that application of the special technique will yield precisely the same ultimate result as the ALJ's initial analysis, the Court is not free to engage in speculation concerning what the ALJ might have concluded had the technique been applied in the first instance. Because this Court "can neither identify findings regarding the degree of [plaintiff's] limitations in each of the four functional areas nor discern whether the ALJ properly considered

all evidence relevant to those areas," *Kohler*, 546 F.3d 260 at 269, the ALJ's failure to apply the special technique cannot be construed as harmless, and the matter must be remanded.

CONCLUSION

For the reasons discussed herein, the Commissioner's cross motion for summary judgment (Dkt. #9) is denied, plaintiff's motion for summary judgment (Dkt. #6) is granted in part. The ALJ's decision is hereby vacated, and the matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 10, 2011.